

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 5: 15CR57-RLV |
| ) | |
| ) | BILL OF INFORMATION |
| v. ) | |
| ) | Violations: |
| ) | 18 U.S.C. § 1347 |
| WAYNE VINCENT WILSON ) | |
| ) | |

THE UNITED STATES ATTORNEY CHARGES:

At the specified times and at all relevant times:

1. From in or about 2007 to in or about June 2014, WAYNE VINCENT WILSON, MD engaged in a scheme to defraud the North Carolina Division of Medical Assistance (hereinafter "Medicaid") and Medicare of at least $210,000 by submitting sham claims to Medicaid and Medicare for non-existent services.

**Relevant Individuals and Entities**

2. WILSON, a resident of Hickory, North Carolina, was licensed as a family practitioner by the North Carolina Medical Board since 1989.

3. WILSON owned and operated Wayne Wilson, MD Family Practice (hereinafter "the Practice"), located in Hickory, North Carolina.

4. Both WILSON and the Practice participated in the Medicaid Program and the Medicare Program as providers of medical services to those programs' beneficiaries. As such, WILSON sought and received reimbursement from those programs for services that he claimed to have rendered to beneficiaries.

5. From in or about 2009 to in or about 2014, WILSON utilized third-party billing companies to submit claims electronically to Medicaid, Medicare and other payors, such as private insurers.

**The Medicaid and Medicare Programs**

6. Medicare is a federal health insurance program administered by the Centers for Medicare and Medicaid Services (hereby referred to as "CMS"), an agency of the U.S. Department of Health and Human Services. Medicare helps pay for reasonable and medically necessary medical services for people aged 65 and older and some persons under 65 who are

1

blind or disabled. Medicare is divided into Part A (hospital insurance) and Part B (outpatient services).

7.   Medicaid is a state administered health insurance program funded predominately by the federal government and administered by the State of North Carolina. Medicaid helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs.

8.   Under Medicare Part B and Medicaid, payment is made to providers of outpatient services. Such providers include physicians, therapists, Durable Medical Equipment suppliers, ambulance providers and numerous other healthcare providers.

9.   CMS contracts with private insurance companies under Medicare Part B to receive, adjudicate and pay Medicare claims submitted by approved and participating healthcare providers and suppliers. Once contracted to process Medicare Part B claims, these private insurance companies are known as carriers. CMS contracted with Palmetto Government Benefits Administrators (PGBA), and Connecticut General Life Insurance Company (CIGNA), to be the carrier to process and pay Medicare Part B claims in the State of North Carolina.

10.   Both Medicare and Medicaid are "health care benefit program[s]," as defined in Title 18, United States Code, Section 24(b).

11.   Health service practitioners and health care benefit programs, including Medicaid and Medicare, use Current Procedural Terminology (CPT) codes to identify and describe health care services and to seek or pay reimbursement based upon those CPT codes.

## The Scheme to Defraud

12.   From in or about 2007 to June 2014, WILSON submitted and caused to be submitted at least $467,376 in fraudulent claims to Medicare and Medicaid claiming that WILSON had provided services when he had not. These fraudulent claims resulted in payments of at least $210,260 to WILSON and the Practice.

13.   In some instances, WILSON added fraudulent claims for non-existent services to claims for actual patient office visits. These sham claims included nerve conduction studies, strep tests, pulmonary stress tests, ultrasounds, arthrocentesis, smoking cessation counseling, lesion destruction and other items. In other instances, WILSON fabricated entire office visits and submitted fraudulent claims for dates when the beneficiary did not even visit the Practice.

14.   Beginning in or about 2006, WILSON contracted with D.D. to perform nerve conduction studies and sought reimbursement for those services through the Practice. In or about February 2012, D.D. terminated his relationship with WILSON and the Practice. As of this date, WILSON did not have the equipment and expertise to provide nerve conduction studies. WILSON, however, continued to submit fraudulent claims to Medicaid and Medicare falsely stating that he had performed such studies for beneficiaries.

15. WILSON "added and padded" his Medicaid and Medicare reimbursement with these false claims because WILSON believed that Medicaid did not pay him enough for his services.

## COUNTS ONE AND TWO
## 18 U.S.C. § 1347
### (Health Care Fraud)

16. The United States Attorney re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 15 of the Bill of Information, and further alleges that:

17. On or about the dates listed below, in Alexander County, within the Western District of North Carolina, and elsewhere, the defendant,

### WAYNE VINCENT WILSON

did knowingly and willfully devise a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of healthcare benefit programs, as defined in Title 18, United States Code, Section 24, in connection with the delivery of, and payment for, healthcare benefits, items and services by submitting and causing to be submitted false and fraudulent claims to Medicare and North Carolina Medicaid seeking reimbursement for services which were not performed:

| Count | Claim Number | Program | Beneficiary | Alleged Date of Service | CPT Code/Procedure |
|---|---|---|---|---|---|
| 1 | 252008241068158 | Medicaid | N.Q. | 8/27/2008 | 95900/Nerve Conduction Study |
| 2 | 311012067737360 | Medicare | J.B. | 2/20/2012 | 76775/Ultrasound |

Each transaction described above being a separate violation of Title 18, United States Code, Sections 1347 and 2.

## NOTICE OF FORFEITURE

Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by section 981(a)(1)(C). The following property is subject to forfeiture in accordance with section 982 and/or section 2461(c):

    a.    all property which is proceeds of the violations in this bill of information; and,

    b.    in the event that any property described in (a) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above:

    a.    A forfeiture money judgment for all currency and monetary instruments which were received during or involved in the crimes alleged in this bill of information, including but not limited to the sum of approximately $210,260.66.

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

_____
KELLI H. FERRY
ASSISTANT UNITED STATES ATTORNEY

TIMOTHY RODGERS
SPECIAL ASSISTANT UNITED STATES ATTORNEY

5

Case 5:15-cr-00057-RLV-DCK   Document 1   Filed 08/25/15   Page 5 of 5